(1)

C

DOCKET NO. 813116                    :SUPERIOR COURT

YVES HENRY LORTHE                    :JUDICIAL DISTRICT OF HARTFORD

V.                                   :DATE _____.

WARDEN


## PETITION FOR WRIT OF HABEAS CORPUS

### A. Details of Conviction & Sentence.

On March 29, 2000, the Petitioner, Yves Henry Lorthe was arrested on the charge or murder (§53a-54(a) of the Connecticut General Statutes) after turning himself into the police on such date. Upon arraignment in the Stamford Superior Court (docket no. 00-0335), the Petitioner was appointed a public defender by the name of Susan M. Hankins. With the help of immediate family members, the Petitioner thereafter obtained a private attorney by the name of Gary A. Mastronardi out of Bridgeport, CT.  On the advice of Attorney Mastronardi, on 4/16/01, the Petitioner entered a plea of guilty on the charge of murder and on 6/13/01 was sentenced to a term of 27 years imprisonment. The Petitioner did not thereafter appeal his conviction and neither applied for a sentence review or filed any other State Habeas Corpus Petition pertaining to his criminal conviction.

### B. Preliminary Statement.

The Petitioner brings this Habeas Corpus Petition pursuant to §22-22 through 23-42 of the Connecticut Practice Book, claiming that his convict-

DEC 0 5 2001
HARTFORD J.D.

(2)

ion is illegal because:(1) he has been denied his right to confront witnesses against him and have a compulsory process for obtaining witnesses in his favor pursuant to the sixth amendment to the United States Constitution;(2) he was sentenced upon a guilty plea without substancial compliance with §39-19 and 39-20 of the Connecticut Practice Book;(3) he was not advised as to his immigration rights pursuant to §54-1j of the Connecticut General Statutes and due process requirement of the fifth amendment, enforcible through the four-teenth amendment to the United States Constitution and;(4) all of the above was a result of the Petitioner being denied his right to effective counsel, in violation of the sixth amendment to the United States Constitution. In support thereof, the Petitioner hereby states the following:

C. Statement of Supporting Facts.

(1) On the eve of March 29, 2000, the Petitioner willingly walked into the police station in Stamford CT and gave a statement that he was res-ponsible for the death of his cousin Jean Bernadel on that same evening minutes before walking into the police station. After being charged with the crime of murder, the Petitioner appeared before the Stamford Superior Court to be arraigned that following day. Being that the Petitioner was deemed to be indigent by the court, the Petitioner was therefore appointed a public defen-der by the name of Susan M. Hankins from the Stamford Judicial District.

(2) During the time which a pretrial conference was conducted, the prosecuting authority discussed with Attorney Hankins whether the Petitioner would be willing to plead to a manslaghter charge with an agreed sentence of

(3)

20 years. However, there was never an agreement to such charge because the Petitioner never authorized Attorney Hankins to make the agreement on his behalf (**see Exhibit A**).

(3) Therefore believing that better representation would be provided had the Petitioner had a private hired attorney, with the help of immediate family members, the Petitioner thereafter obtained Attorney Gary A. Mastronardi out of bridgeport CT to represent him in his case. The initial fee for representing the Petitioner was $30,000.00 in two parts; $15,000.00 if the case was disposed of without trial and an additional $15,000.00 if case proceeded to a trial (**see Exhibit B**). Since the Petitioner's family believed that they would be able to pay the entire fee over a course of time, Attorney Mastronardi agreed to an initial immediate payment of $10,000.00 (**Exhibit C**).

— (4) Being that the Petitioner's case involved mitigating circumstances, the Petitioner, on the advice of Attorney Mastronardi decided to pursue a defense of extreme emotional disturbance. Therefore, through Attorney Mastronardi, at a fee of $1,000.00, the Petitioner obtained a psychiatrist out of Glastonbury CT by the name of Kenneth M. Selig, to conduct a psychiatric evaluation of the Petitioner (**Exhibit D**).

(5) In preparation for conducting the psychiatric evaluation of the Petitioner, Dr. Selig was provided with the following material: the Investigator's Report from the Public Defender's Office (i.e., police reports and statements by various witnesses), an autopsy report of the victim, school records of the Petitioner's education in CT schools and the Petitioner's records from the Department of Corrections (i.e., medical and mental health records obtained during his arrest). However, Dr. Selig was never provided

(4)

with any further information relating to the Petitioner's childhood, culture and family background in Haiti, nor was there any effort by Attorney Mastronardi in obtaining such information from a Haitian Consulate. (The Petitioner immigrated from Haiti to the United States from Haiti in 1994 with his mother and siblings, to live with his father, who had immigrated from Haiti as well to the United States in the 1980's).

(6) On 12/12/00, the Petitioner was interviewed by Dr. Selig for approximately a hour and 15 minutes. During such interview/evaluation, Dr. Selig questioned the Petitioner in regards to the Petitioner's educational history in CT public schools and the Petitioner's adjustment in the Department of Corrections but never discussed the Petitioner's upbringing, culture and family history in Haiti (as stated above, the Petitioner was born in Haiti and lived in Haiti for approximately 16 years before immigrating to the United States), or the night of the incident in question.

(7) According to Dr. Selig, his interview/evaluation of the Petitioner revealed no psychological effect that would sustain a defense for extreme emotional disturbance. However, Dr. Selig concluded that additional testing may reveal brain damage, since the Petitioner reported a past of head injuries but that such testing would require additional sums in the thousands (**Exhibit E**). After being advised of all of the above, the Petitioner's family concluded that they would not be able to sustain the additional payments for the psychiatric evaluations or additional payments to Attorney Mastronardi for his services (due to re-occurring financial problems).

(5)

(8) Instead of terminating representation and turning the Petitioner's case over to the Plublic Defender's Office (due to the Petitioner's family's inability to sustain the payments), Attorney Mastronardi began to suggest that the Petitioner accept a plea of guilty to the crime of murder and that in the event that the Petitioner did plead guilty, it would be to a term of 25 years imprisonment (**Exhibit F**). In considering Attorney Mastronardi's advice, the Petitioner thereafter entered a plea of guilty to the charge of murder aand was scheduled for sentencing on 6/13/01 after a Presentence Investigation Report was completed. However, when the court canvassed the Petitioner as to voluntarily entering the plea, there were many questions that the Petitioner did not understand that Attorney Mastronardi coerced him in responding to.

(9) Upon interview and completion of the Presentence Investigation Report, the Probation Officer who interviewed the Petitioner reported that the Petitioner was the product of a stable upbringing and that the Petitioner expressed no remorse for the victim (**last page of Exhibit** G). However, as stated above, there was never any investigation of the Petitioner's upbringing in Haiti to determine whether he was the product of a stable upbringing and, contrary to the report by the officer that the Petitioner expressed no remorse, such report contained a statement from the Petitioner expressing remorse for the victim (**see 2nd page of Exhibit** G).

(10) On the day that the Petitioner was sentenced, Attorney Mastronardi neither objected to the officer's report that the Petitioner expressed

(6)

no remorse or advised the court that there was insufficient information regarding the Petitioner to determine that he was the product of a stable up-bringing. Therefore, in sentencing the Petitioner, the court relied on in-accurate information and sentenced the Petitioner to a term of 27 years (contrary to what Attorney Mastronardi told him he would be sentenced to).

(**11**) In addition, upon accepting the plea and sentencing, neither the court or Attorney Mastronardi advised the Petitioner that there is a probability that he would be deported upon completion of his sentence. The Petitioner did not know that he had a detainer on him until after imposition of the sentence (**see Exhibit H**). He was never advised as to his immigration rights upon arrest, plea or sentence.

D. Claims For Relief.

(**1**) According to rule 1.16 of the Connecticut Rules of Professional Conduct, a lawyer shall not represent a client or where representation has commenced, shall withdraw from representating a client if: (**a**) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; (**b**) the client fails to substantially fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled and; (**c**) withdrawal can be accomplished without material adverse effect on the interests of the client. Instead of ill advising the Petitioner to plead guilty rather that going to trial, Attorney Mastronardi should have terminated representation and turned the Petitioner's

(7)

case over to the Public Defender's Office or requested from the court that state provided funds be given for the additional psychological testing. Altough Dr. Selig stated that he found no psychological effect that would sustain a defense for extreme emotional disturbance, there was no effort in conducting any additional testing for brain damage or any further inquiry into the Petitioner's childhood, culture, the night of the incident or the Petitioner's family history in Haiti. The fact that Dr. Selig indicated that additional testing may have revealed brain damage due to the Petitioner's past history of head injuries could have been a key element in a more thorough evaluation. In rendering ineffective assistance of counsel and overturning a guilty plea in a case titled Copas V. Commissioner, 234 Conn. 139 at 158 (1995), the Connecticut Supreme Court considered testimony by Dr. Selig as an expert witness in stating that a diagnostic clinic report of Copas was deficient because it included no psychological testing **and** did not provide any evaluation of possible brain damage. In the Petitioner's case it is obvious that there were mitigating circumstances due to the fact that the state was initially willing to offer the Petitioner a manslaughter charge. The mere fact that the Petitioner was not financially stable to sustain payment to Attorney Mastronardi violated rule 1.16 of the Professional Rules Of Conduct, precluded the Petitioner from a defense and having a compulsory process and rendered ineffective assistance of counsel, in violation of the sixth amendment to the United States Constitution.

(2) According to the Professional Rules Of Conduct, a lawyer shall explain a matter to the extent reasonably necessary to permit the client to

(8)

make informed decisions regarding representation. In advising the Petitioner to plead guilty, Attorney Mastronardi should have advised the Petitioner that the plea agreement could exceed beyond 25 years. The fact that the Petitioner believed that he was pleading to 25 rather than 27 without being canvassed properly violated §39-19 and 39-20 of the Connecticut Practice Book.

(3) In accordance with §43-10 of the Connecticut Practice Book, before imposing a sentence or making any other disposition after the acceptance of a plea of guilty, the judicial authority shall allow the parties to be heard to explain or controvert the presentence investigation report if the information contained in the report is inaccurate. The failure of Attorney Mastronardi to object to the inaccurate information concerning the Petitioner's upbringing and attitude towards the victim violated the Petitioner's sixth amendment right to confront witnesses against him and rendered ineffective assistance of counsel.

(4) In accordance with Connecticut General Statutes §54-1j, the court shall not accept a plea of guilty from any defendant in any criminal proceeding unless the court advises him of the probability of deportation if he is an immigrant to the United States. The fact that neither the court or Attorney Mastronardi advised the Petitioner of such probability violated the Petitioner's right to due process pursuant to the fifth amendment, enforcible through the fourteenth Amendment to the United States Constitution, thus making the Petitioner's plea involuntary without substancial knowledge of the consequences.

(9)

E. Requested Relief.

     The Petitioner requests the court to withdraw his guilty plea.

F. Appointment of Counsel.

     The Petitioner requests the court to appoint counsel to represent him in this petition.

## CERTIFICATION

     I, Yves Henry Lorthe, hereby certify that everything herein is true and correct to the best of my knowledge.

_____
Date

_____
Signature of Petitioner

Address:  Yves Henry Lorthe #281693
MacDougall Correctional Inst.
1153 East Street South
Suffield, CT 06080

Sworn and subscribed before me on this_____day of_____,2001.

_____
Notary

- 19 -

LORTHE V. WARDEN

EXHIBIT A



# State of Connecticut

## DIVISION OF PUBLIC DEFENDER SERVICES

OFFICE OF PUBLIC DEFENDER
SUPERIOR COURT
115 HOYT STREET
STAMFORD, CONN. 06905

SUSAN M. HANKINS
PUBLIC DEFENDER
(203) 965-5245
FAX (203) 325-9399

November 5, 2001

Yves Henry Lorthe
#281693
MacDougall CI
1153 East Street South
Suffield, CT  06078

Dear Mr. Lorthe:

As you recall, I represented you when you were charged with the offense of murder.  Our office investigated the case, and I met several times with you, and with your family.

Regarding your inquiry concerning the pretrial negotiations:  There were pretrial conferences concerning your case.  The people present at the pretrial were the prosecutor, the judge and me.  The prosecutor discussed with me whether you would be willing to plead to manslaughter for an agreed 20 year sentence. At the time of the pretrial discussions, I explained to you that manslaughter carried a lower maximum sentence of 20 years, that murder had a maximum of 60 years and a minimum of 25 years; that murder sentences were not subject to any reduction in time, while manslaughter sentences were treated as other crimes, like robbery or assault. There would never have been a 10-20 year offer, as referred to in your letter, because there are no longer indeterminate sentences.  As you have indicated in your letter, I informed you that we would be able to resolve the case as a manslaughter if I went back to the prosecutor with your position.  However, there was never a firm offer of the manslaughter and 20 years, because you did not authorize me to make that agreement on your behalf.

Please have your habeas attorney contact me directly for any information regarding your case.

Yours truly,

*Susan M. Hankins*

Susan Hankins, Public Defender

LORTHE V. WARDEN

EXHIBIT B

_____

THE LAW FIRM OF

# GARY A. MASTRONARDI

2112 NORTH AVENUE

BRIDGEPORT, CONNECTICUT 06604

(203) 368-0411

FAX (203) 368-6875

GARY A. MASTRONARDI*

EDWARD T. MURNANE, JR.*
*ALSO ADMITTED TO
 PRACTICE IN NEW YORK

July 11, 2000

Ernest & Memos Lorthe
20 Frank Street
Stamford, CT 06902

Re:    State v. Yves Henry Lorthe

Dear Mr. and Mrs. Lorthe:

The purpose of this letter is to memorialize in writing the terms under which I will represent your son in his pending murder case in Stamford Superior Court.

The total fee shall be $30,000.00 payable in two parts:

1. $15,000.00 due immediately; if the case is disposed of without trial this amount shall be the total amount due; and

2. $15,000.00 due and payable over nine months should it be decided that this case will have to proceed to trial.

The fee does not include costs and expenses. These amounts are over and above the fee and shall be due and payable by you as incurred.

Finally, my representation, and the fees quoted herein, apply through trial in the superior court. They do not include the cost of an appeal, should one be necessary.

- 2 -

If you agree to the terms set forth herein, please sign below.

Very truly yours,

Gary A. Mastronardi

Read, understood and agreed
this 11th day of July, 2000.

LORTHE V. WARDEN

EXHIBIT C

THE LAW FIRM OF

# GARY A. MASTRONARDI

2112 NORTH AVENUE

BRIDGEPORT, CONNECTICUT 06604

(203) 368-0411

GARY A. MASTRONARDI*

EDWARD T. MURNANE, JR.*
*ALSO ADMITTED TO
  PRACTICE IN NEW YORK

FAX (203) 368-6875

August 29, 2001

Yves Henry Lorthe, #281693
MacDougall Correctional Institution
1153 East Street South
Suffield, Connecticut 06078

Dear Henry:

In accordance with your request in your recent letter, enclosed please find:

1.    My entire correspondence file;

2.    A signed copy of the written fee agreement between your father, Ernest Lorthe, and me dated July 11, 2000;

3.    Copies of medical treatment records which I accumulated on your behalf for consideration by Dr. Seelig;

4.    Your probation report; and

5.    Copies of school records, also accumulated on your behalf for consideration by the doctor.

I do not have actual records of payments by your parents, but you can easily obtain those records directly from your parents. My recollection is that your father only paid me two-thirds

- 26 -

of the initial $15,000.00 retainer (i.e. $10,000.00), and an additional $1,000.00 for Dr. Seelig's examination.  If my recollection is incorrect, all of this can be confirmed or refuted by your father.

I hope what I have enclosed is helpful to you.  I wish you all the best.

Very truly yours,

Gary A. Mastronardi

GAM/jmb
Enc.

LORTHE V. WARDEN

EXHIBIT D

THE LAW FIRM OF

# GARY A. MASTRONARDI

2112 NORTH AVENUE

BRIDGEPORT, CONNECTICUT 06604

(203) 368-0411

GARY A. MASTRONARDI*

EDWARD T. MURNANE, JR.*
*ALSO ADMITTED TO
  PRACTICE IN NEW YORK

FAX (203) 368-6875

November 24, 2000

Dr. Ken Selig
257 New London Turnpike
Glastonbury, Connecticut 06033

Re:    Yves Henry Lorthe

Dear Dr. Selig:

Per our discussion, I have enclosed a check for $1000.00 and copies of the following materials relating to Mr. Lorthe's case:

1) the police report;
2) the Public Defender's Investigator's notes;
3) the autopsy report;
4) all school records available from the Stamford Board of Education; and
5) medical records from the Department of Corrections.

At present, Mr. Lorthe, Inmate No. 281693, is incarcerated at Walker Reception, 1151 East Street South, Suffield, CT 06078. Also, his next court date is December 14, 2000, and the court has instructed me that your evaluation should be completed by then. If you cannot complete your report by then, please let me know when you can finish so that I can get more time from the judge.

I am sending a copy of this letter to Mr. Lorthe and advising him to cooperate fully with you. If I can be of any further assistance, please do not hesitate to contact me.

Very truly yours,

Gary A. Mastronardi

Enc.

**THE LAW FIRM OF**
**GARY A. MASTRONARDI**
TRUSTEE NO. 1
2112 NORTH AVE.
BRIDGEPORT, CT 06604

2893

51-142/211
9101

DATE 11/24/00

PAY TO THE ORDER OF _Dr. Zealig_                    $ 1,000.00

_One Thousand and no/100_ _____ DOLLARS

Lafayette
American
Bank
Hamden Central Office
Hamden, Connecticut 06518

State v. Lorthe (Psych Examination)

⑈002893⑈ ⑆0211014 25⑆ 0011046619⑈

- 30 -

LORTHE V. WARDEN

EXHIBIT E

Certified by the American
Board of Psychiatry and Neurology

**KENNETH M. SELIG, M.D., J.D.**
Adult and Forensic Psychiatry
257 New London Turnpike
Glastonbury, CT 06033

Member of the Connecticut
Bar Association

January 2, 2001

Telephone: (860) 659-8998
Fax: (860) 659-4723

Attorney Gary A. Mastronardi
2112 North Ave.
Bridgeport, CT 06604

Re:     State of Connecticut v. Yves Henry Lorthe (DOB ▮▮▮▮▮)

Dear Attorney Mastronardi:

At your request, I conducted a psychiatric evaluation of your client, Mr. Lorthe, who is charged with murder stemming from an alleged incident on March 30, 2000. I interviewed Mr. Lorthe at the Walker Correctional Center for one and one-quarter hours on December 12, 2000. I explained to Mr. Lorthe and he understood the purpose of the evaluation and the limits on confidentiality therein.

I reviewed the following materials:

1.      Your letter to me, dated November 24, 2000;

2.      The Investigator's Report from the Public Defender's Office in Stamford in which several individuals were interviewed between March 30, 2000 and August 22, 2000;

3.      Autopsy report which indicated that the victim died of a stab wound to the chest;

4.      Mr. Lorthe's school records which indicated that he graduated from Stamford Public High School in June of 1997, though he was on home instruction for the last two years;

5.      Police report, dated March 30, 2000;

6.      Mr. Lorthe's records from the Department of Corrections, dated March 30, 2000 through August 5, 2000.

On the basis of the aforedescribed evaluation, it is my opinion that Mr. Lorthe is competent to stand trial, was not insane at the time that he allegedly stabbed the victim in this case, and would have a very hard time sustaining a defense of extreme emotional disturbance.

Attorney Gary A. Mastronardi                    Re:  Yves Henry Lorthe   2

Mr. Lorthe does have a history of violent conduct and has been arrested on three previous occasions, all for fighting and all in Stamford.   He describes a long history of problems with his temper and was expelled from high school for fighting and needed to be home schooled the last two years because of his behavior.

He has had trouble adjusting to being incarcerated, but not to the point that he has received medications, in part because he has refused to take medications. When I interviewed him, I saw no indication for psychiatric medications.   There is no doubt that Mr. Lorthe has problems controlling his anger and has a tendency to get enraged and then to feel remorseful afterwards, but this would not constitute a defense.      There may be some underlying paranoia and suspiciousness about him, but this does not rise to the level of a mental disease or defect.    He indicates that he has lost his temper both provoked and unprovoked, and there is a possibility that he has Intermittent Explosive Disorder, but I cannot be certain of that at this time.

His history of explosive disorders may be related to brain damage which could be more fully explored with psychological testing, neuropsychological testing, an EEG of his brain, and an MRI of his brain.   He does report a past history of numerous head injuries, although he has never lost consciousness, and I do not find any significant cognitive problems during my interview.    Nonetheless, a full and thorough evaluation would include the aforedescribed tests, but these would require substantial additional sums (an MRI alone is probably $1,000 and the psychological and neuropsychological testing would be another probably $2,000 and so on).   Whether or not you wish to pursue this is your decision, but it is my judgment that after we got through with all of that testing, there is a low likelihood that we would find evidence of brain damage.   This is particularly the case since there is no evidence from his school records that he was significantly cognitively impaired.

I trust the foregoing is responsive to your inquiries.   If there are other issues which you would like me to address or issues addressed here which you would like me to elaborate, please do not hesitate to contact me.

Sincerely yours,

Kenneth M. Selig, M.D., J.D.

KMS:jb

- 33 -

LORTHE V. WARDEN

EXHIBIT F

THE LAW FIRM OF

# GARY A. MASTRONARDI

2112 NORTH AVENUE

BRIDGEPORT, CONNECTICUT O66O4

(2O3) 368·O4II

GARY A. MASTRONARDI*

FAX (2O3) 368·6875

EDWARD T. MURNANE, JR.*
*ALSO ADMITTED TO
PRACTICE IN NEW YORK

February 23, 2001

Yves Henry Lorthe, #281693
Walker Correctional Institution
1151 East Street South
Suffield, CT 06078

Re:    **State v. Lorthe**

Dear Henry:

I was in court this morning on your case and, after pre-trying your case with the prosecutor and Judge Kavenewsky, I tried to get into the police lockup to meet with you. Unfortunately, the visiting room was being used by probation officers, and I was told that it would be at least two hours before I could get in to see you. Since I could not wait that long, I left and decided to send you this letter to explain where things stand with your case.

First, I will tell you what occurred at the pretrial. At the pretrial, the state informed Judge Kavanewsky that the only charge to which it would accept a guilty plea from you would be murder. The prosecutor also informed the judge that he believed that an appropriate sentence for you on that charge was thirty years. If you were to plead guilty to murder, that charge carries with it a mandatory minimum of twenty-five years. After listening to the state, the judge informed me that, based upon the facts of the case, and based upon the unwillingness of the state to reduce the charge to something other than murder, (for example, manslaughter), the best he would be able to do in this instance would be to sentence you, upon a plea of guilty to the murder charge, to a term of twenty-five years.

Since, under the law, the prosecutor and only the prosecutor controls what charge you are permitted to plead guilty to, there is virtually nothing that I, or even the judge for that matter, can do. The prosecutor also informed both the judge and me during the pretrial that the reason the state was insisting on a plea to murder rather than some lesser charge was because Jean Rene Bernadel's parents, Paulette and Beauvil, had sent him a letter in which they requested that the state prosecute you to fullest extent possible under the law. In fact, in the letter, the parents ask

that you receive "life" in prison as a sentence. While the prosecutor obviously does not believe that "life" would be an appropriate sentence, he claims that he is under tremendous pressure from Bernadel's family to push for a substantial sentence and that this is the reason he is unwilling to reduce the murder charge against you.

If the state refuses to reduce the charge, the best offer I can get for you from the judge is the "mandatory minimum" permitted under the murder statute – that is, twenty-five years. As I said, the judge indicated to me during the pretrial that if you were willing to plead guilty to the prosecutor's murder charge, he would be willing to impose the minimum sentence permitted under law – twenty-five years. Your case was then continued by the judge until March 16 in order to give me time to meet with you to discuss our options.

It is my intention to visit you at Walker C.I. sometime before March 16 to discuss the judge's offer. During our meeting, you and I will have to make a decision as to whether to accept the judge's offer or take your case to trial. So that, when I come to Walker, we can intelligently discuss your case, I am providing for your review in advance of our meeting the enclosed documents. Please read the witness statements carefully. If we went to trial, these are the people the state would call to testify against you and the statements indicate exactly what the testimony would be. Also enclosed is a copy of the letter the state received from Bernadel's parents asking that you receive a life sentence. Please read everything I have enclosed and be ready to discuss your case with me when we meet.

Finally, the judge today ordered your car released. When I come to see you I will have something for you to sign permitting the police to release your car to your parents.

Very truly yours,

Gary A. Mastronardi

GAM/jmb

- 36 -

LORTHE V. WARDEN

EXHIBIT G

_____

INVESTIGATION REPORT

# INVESTIGATION REPORT                                              _X_PSI __AI

## CONNECTICUT JUDICIAL DEPARTMENT
### OFFICE OF ADULT PROBATION

| COURT NAME OF DEFENDANT | | COURT | TOWN |
|---|---|---|---|
| **LORTHE,** Henry Y. | | JDSN | Stamford |

| TRUE NAME OF DEFENDANT | SENTENCING DATE | DOCKET NO. |
|---|---|---|
| Lorthe, Henry Yves | 5-31-01 | |

| ALIAS OR NICKNAME | State No. | FST CR00-132150 |
|---|---|---|
| none | 324 FST 01 20506 S | |

| OFFENDER DESCRIPTION | PRESENT ADDRESS | TELEPHONE NO. |
|---|---|---|
| | Walker Reception- ██████ Stamford CT 06902 | 353-██ |
| | NAME AND ADDRESS OF CLOSEST RELATIVE | TELEPHONE NO. |
| | Mother- Mimose Lorthe ██████ Stamford CT 06902 | 353-██ |

| AGE | DATE OF BIRTH | PLACE OF BIRTH | SOC. SEC. NO. |
|---|---|---|---|
| 23yrs | ██████ | Haiti | ██████ |

| SEX | HEIGHT | WEIGHT | EYES | HAIR | COMPLEXION | BUILD | RACE |
|---|---|---|---|---|---|---|---|
| Male | 5'9" | 160lbs | Brown | Black | Dark | Medium | Black |

| IDENTIFYING MARKS |
|---|
| None visible |

| OFFENSE DESCRIPTION | JUDGE | STATE'S ATTORNEY | DEFENSE ATTORNEY |
|---|---|---|---|
| | Honorable J.F. Kavanewsky | | Gary Mastronardi |

| OFFENSE(S) AS CHARGED |
|---|
| Murder |

| OFFENSE(S) AS CONVICTED | STATUTE(S) & PENALTY(IES) |
|---|---|
| Murder | 53a-54(a) NLT 25 yrs, NMT Life |

| ARREST DATE | CO-DEFENDANTS | |
|---|---|---|
| 3-29-00 | | none |

| BOND | CONFINED | CONVICTED BY | CRIMINAL RECORD |
|---|---|---|---|
| 1,000,000 | Yes | Guilty plea | No |

| DISPOSITION |
|---|
| |

INVESTIGATION REPORT

## OFFENSE:

### *FST CR00-132150-*

On 3-29-00 officers of the Stamford Police Department were on route to a report of an abandoned motor vehicle when they were flagged down by a group of males. At the same time there was a report over the dispatch radio of a stabbing. The officer saw a black male lying face up in the grass and bleeding from the upper chest area. A witness at the scene gave a description of the assailant and the vehicle he was driving which was then broadcast over the police radio. It was learned from witnesses that the suspect was the cousin of the victim and the two had been arguing. The witnesses also stated that when they left the area with the victim, Lorthe was following them and when they stopped, Lorthe chased the victim with a knife and stabbed him. A large kitchen knife approximately 12" in length was located by the foot of the victim. The victim was taken to the emergency room where he died a little while later.

During the investigation the subject, Henry Lorthe turned himself in at the Stamford Police Department and was arrested at this time.

On 4-16-01 Henry Lorthe entered a guilty plea to Murder in the Stamford Superior Court.

## OFFENDER'S VERSION:

The offender gave the following statement,

"I was at my house at Frank Street. I was in my room and heard my mother arguing with someone out in the hallway. I heard my mother say, 'Why you hit me?' I got up and looked out the window and seen a bunch of people on the front porch, including my mom and dad. I went back to the kitchen and got a long kitchen knife. As I came back out to the porch, I had the knife in my back pocket, and then I see this Haitian guy, His name, (victim's name). He pushed my dad. My dad is sixty –six years old. My mom and this guy (victim's name) were arguing also. My mom was telling (victim's name) to stop hanging around with my brother. Every time the (victim's name) would hang around with my brother. My brother would get into trouble. While all this was going on (victim's name) had two of his friends there, one of them lives upstairs. I don't know either of their names. They were just staying there, they weren't involved. I told (victim's name) 'Why are you arguing with my parents? They are old people, Why don't you walk away?' Then we got into an argument. (Victim's name) said 'I'm going to kill you.' After he said that, (victim's

INVESTIGATION REPORT

name) left with his two friends, he was driving a blue Honda Civic. I don't know where they were going. I thought he was going to come back to my house and kill me, so I left and went for a ride to cool down. I took the knife with me. When someone says they are going to kill you, you need some protection. I took it very seriously when he made that comment. My parents stayed at home. After driving around for about five minutes, I was driving up east Main Street towards the Chinese restaurant when I seen my mother with a bunch of people on Lawn Ave. They were all on the sidewalk in front of the apartments, not by the street. I turned into Lawn Ave. and I saw that  (victim's name)'s car was there, the same blue Honda Civic. Then I seen him arguing with my mother. I thought he was looking for me. I got out of my car and there was a bunch of (victim's name)'s friends out there. My mom and him were still arguing when I got out of the car. The victim saw me and picked up an object and he faced in my direction. I panicked and lost control.

I am truly sorry for my actions every day. I ask the lord for forgiveness, as I shall carry the burden, the shame, the torment for the rest of my life. I know I must be punished. All I ask is that my sentence be weighed by the punishment I carry each and every day. I know given a chance, I can do better for my family and others. I can not forgive myself nor do I ask for forgiveness, as I have no right. What I ask for is an opportunity."

## VICTIM'S ATTITUDE

The following statement was received from the parents of the victim through the victim's advocate.

" Our names are (Victim's parents' names). We are the parents of (Victim's name). We are writing this letter to tell the court how we feel about this whole crime that happened. On March 29, 2000. (offender's name) took something that meant the world to us, not just anything, but our son. (Victim's name) was the type of person that anyone can rely on. He would give a hand to anyone that needs his help. There is no reason why for a man to take another man's life under any circumstance. We don't really know exactly what happened that night, except for the parents of (offender's name), (Victim's name), and himself for what we know that the mother of (offender's name) is the one that provoked my son to begin with. We heard that the mother said to the cops that (Victim's name) had pushed her and she fell and hit her hips. If that s the case what was she doing at Lawn Ave. the night my son got killed by her son. My son is a tall

INVESTIGATION REPORT

and almost 300 lb. Man, if he had pushed her why didn't she call the cops on him for assaulting her, also we heard that the father of (offender's name) assaulted our son by hitting him with some kind of bat. Why was he not arrested for assaulting my son. We want to see justice to happen. No one can ever bring back our son except the most high. (offender's name) and his family took both our son and us and they could never give him back to us. We suffer day after day knowing that we will never see our son again while (offender's name)'s mother can see him from time to time. The only way we can see our son is to keep his memories alive. Also the father of (offender's name) came to see us the Saturday before my son got buried to talk to us. He never mentioned to us that our son assaulted his wife and in fact he say he didn't even know if his wife was talking to my son. Nor did he mention that my son hit his wife or him. Anyway, we like to see (offender's name) go to jail for life. We mean life in jail. That's justice for us.

INVESTIGATION REPORT

| S.P.B.I. NUMBER | F.B.I. FILE NUMBER |
|---|---|
| CT00779379 | 960122CB3 |

| DATE | LOCATION | CHARGE | DISPOSITION |
|---|---|---|---|
| 2-12-98 | Stamford | Breach of Peace | 6 months e/s 1 year probation |
| 3-29-00 | Stamford | Murder | Instant Offense |

INVESTIGATION REPORT

## CURRENT PERSONAL HISTORY:

Henry Lorthe is the second of four children born to the marriage between Mimose Lorthe and Ernest Lorthe. The subject's parents have been married for the past ten years.

The subject's mother, Mimose Lorthe, currently resides in Stamford with her husband and four children. She is employed at the YMCA in Stamford and has been working there for two years as a housekeeper. According to Lorthe he is very close with his mother and has always shared everything with her. Lorthe was raised by his mother in Haiti while his father was in the United States earning a living and sending support to the family in Haiti. His mother did not work while he was growing up and he stated that although they had what they needed he grew up in a poor environment. Lorthe stated that although he is very close with his mother he has not seen her in the past year since his arrest. He indicated that this has had a devastating effect on her and she has been very sad and always cries when he speaks to her on the phone. Lorthe stated that it only makes her and him feel worse when they see each other. According to Lorthe's brother the family is going through a very tough time right now and in regard to the offense they feel as if they have lost two members of their family.

The offender's father, Ernest Lorthe, has been residing in the United States since 1980 and is employed in the restaurant business. He has been in this field for the past twenty years and has been the sole support of the family. Lorthe stated that he did not grow up with his dad present so he is not as close with his father as he is with his mother but the two do have a good relationship. In 1994 Mr. Lorthe sent for the family and since that time they have been residing all together. Lorthe stated that in the time that he has spent with his father they have had an okay relationship and his father is also sad about the instant offense.

Henry Lorthe has two brothers and one sister who he stated he is very close to. He indicated that they were all raised together and have maintained the family closeness they had in Haiti once they came here. His brother stated that he feels very bad for what has happened and hopes that his brother can get a second chance to prove he is a good person.

Henry Lorthe is single. He stated that he does have one child, age one and a half but he has never seen this child and is unaware as to her whereabouts at this time. He indicated that he lost contact with his child's mother and is not sure where they are living. He has never been a part of his daughter's life and

INVESTIGATION REPORT

has never paid any child support.

Lorthe was born and raised in Haiti and attended public schools in Haiti until the family relocated to Stamford in 1994. He attended Westhill High School and stated that he graduated in 1997 with average grades. This officer received records from Westhill High School which seem to indicate that Lorthe withdrew from school to be home tutored. The records are unclear as to whether he ever completed this course of study and received his high school diploma. Lorthe has no further education or training. He stated that he did want to attend an auto mechanics course but had no transportation so he was unable to pursue this course of study.

Lorthe is unemployed at this time. He has been incarcerated for over a year. Prior to his incarceration he was employed at Burns Security in Stamford from 4-30-98 until 2-27-00 on a full time basis. His employer did not provide any further information regarding his performance during this two- year period of his employ. Prior to this position he indicated that he was employed at a windshield company in Stamford for approximately four months but could not remember the name of this company. He also stated that he was employed through a temporary agency in Stamford for seven months but was unsure which agency. In 1997 Lorthe indicated he was employed for a year at Stop and Shop in Norwalk and then in Stamford. The Norwalk store has since closed and the Stamford store has yet to respond to this officer. In 1996 Lorthe stated that he was employed at CVS in Stamford also full time.

According to Lorthe he is in good physical health and has no history of mental illness or treatment. He stated that since his incarceration he does see the psychiatrist every two weeks and was taking medication for depression but he is no longer on this medication. He indicated that he has never experimented or used illegal substances of any type. In regard to alcohol he stated that he first tried alcohol at the age of ten but did not use alcohol with any regularity. The subject has never been involved in any substance abuse treatment.

Lorthe denies his involvement with any gangs and stated that his friends and associates were not involved with gangs either. Since his incarceration Lorthe received one ticket for Assault on a DOC employee. This assault occurred in March of this year and resulted in segregation for fifteen days and loss of phone privileges for forty-five days.

INVESTIGATION REPORT

Henry Yves Lorthe appears before the court for sentencing after having previously entered a guilty plea to Murder. The subject is the product of a stable upbringing. Despite the absence of his father for a period of time, his mother maintained a loving and supportive home until the family was reunited in 1994. Lorthe appears to have his high school education and has maintained stable employment for the past few years. He is the father of one child for whom he has never taken responsibility either financially or emotionally. The offender does not have a lengthy criminal history, however this offense has resulted in the loss of another's life. Lorthe does not express any remorse for his victim, only remorse for the consequences he faces based on his own actions. In this officer's opinion, as well as the point of view expressed by the victim's family, that no sentence can make the victim whole again. Therefore, this offense requires a substantial punishment. A long- term period of incarceration is warranted to show Lorthe the value of human life and that there must be consequences for his actions.

| SUPPLE MENTAL INFORMATION | ATTACHED (Specify) | | |
|---|---|---|---|
| RECOMMENDATION | BASED ON THE INVESTIGATION THE FOLLOWING IS RECOMMENDED: | | |
| | PROBATION:        YES        x        NO        OTHER (Specify below) | | |
| | SPECIAL CONDITIONS/CIRCUMSTANCES | | |
| RESPECTFULLY SUBMITTED | | COUNTERSIGNED BY | |
| Bobbi Spielman, S.P.O. | | J Michael Hull, IAR Supervisor | |

LORTHE V. WARDEN

EXHIBIT H

File No. A 44 586 797

Date: 7-17-01

TO: (Name and title of institution)

Warden
Walker RSMU

FROM: (INS office address)

U.S. IMMIGRATION AND NATURALIZATION SERVICE
450 MAIN STREET
HARTFORD, CT 06103-3060

Name of alien: Henry Loithe  # 281693

Date of birth: ▆▆▆▆▆▆     Nationality: Haiti     Sex: M

You are advised that the action noted below has been taken by the Immigration and Naturalization Service concerning the above-named inmate of your institution:

[X] Investigation has been initiated to determine whether this person is subject to removal from the United States.

[ ] A Notice to Appear or other charging document initiating removal proceedings, a copy of which is attached, was served on _____
(Date)

[ ] A warrant of arrest in removal proceedings, a copy of which is attached, was served on _____
(Date)

[ ] Deportation or removal from the United States has been ordered.

It is requested that you:

Please accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment which he or she would otherwise receive.

[X] Federal regulations (8 CFR 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal holidays) to provide adequate time for INS to assume custody of the alien. You may notify INS by calling 240-3012 during business hours or _____ after hours in an emergency.

[X] Please complete and sign the bottom block of the duplicate of this form and return it to this office. [ ] A self-addressed stamped envelope is enclosed for your convenience. [ ] Please return a signed copy via facsimile to _____
(Area code and facsimile number)

Return fax to the attention of  Investigations  at  860-240-3526
(Name of INS officer handling case)        (Area code and phone number)

[X] Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

[X] Notify this office in the event of the inmate's death or transfer to another institution.

[ ] Please cancel the detainer previously placed by this Service on _____

_____        Assistant Officer in Charge
(Signature of INS official)              (Title of INS official)

Receipt acknowledged:                      53 A 054 A

Date of latest conviction: 6/13/01   Latest conviction charge: MURDER
Estimated release date:    3/30/27

Signature and title of official: Walter L. Twarvich   Officer Asst.

Form I-247 (Rev. 4-1-97) N