Henry Lorthe v. Warden
3:01-CV-1479 (AWT)

# Exhibit 1

Respondent's Answer to
Amended Application
for a Writ of Habeas Corpus

(1)

DOCKET NO. 813116                :SUPERIOR COURT

YVES HENRY LORTHE #281693        :JUDICIAL DISTRICT OF HARTFORD

V.                               :DATE_____.

WARDEN


## PETITION FOR WRIT OF HABEAS CORPUS

A. Details of Conviction & Sentence.

On March 29, 2000, the Petitioner, Yves Henry Lorthe was arrested on the charge or murder (§53a-54(a) of the Connecticut General Statutes) after turning himself into the police on such date. Upon arraignment in the Stamford Superior Court (docket no. 00-0335), the Petitioner was appointed a public defender by the name of Susan M. Hankins. With the help of immediate family members, the Petitioner thereafter obtained a private attorney by the name of Gary A. Mastronardi out of Bridgeport, CT. On the advice of Attorney Mastronardi, on 4/16/01, the Petitioner entered a plea of guilty on the charge of murder and on 6/13/01 was sentenced to a term of 27 years imprisonment. The Petitioner did not thereafter appeal his conviction and neither applied for a sentence review or filed any other State Habeas Corpus Petition pertaining to his criminal conviction.

B. Preliminary Statement.

The Petitioner brings this Habeas Corpus Petition pursuant to §22-22 through 23-42 of the Connecticut Practice Book, claiming that his convict-

FILED
APR 6 2005
DEC 0 5 2001
HARTFORD J.D

(2)

ion is illegal because:(1) he has been denied his right to confront witnesses against him and have a compulsory process for obtaining witnesses in his favor pursuant to the sixth amendment to the United States Constitution;(2) he was sentenced upon a guilty plea without substancial compliance with §39-19 and 39-20 of the Connecticut Practice Book;(3) he was not advised as to his immigration rights pursuant to §54-1j of the Connecticut General Statutes and due process requirement of the fifth amendment, enforcible through the fourteenth amendment to the United States Constitution and;(4) all of the above was a result of the Petitioner being denied his right to effective counsel, in violation of the sixth amendment to the United States Constitution. In support thereof, the Petitioner hereby states the following:

C. Statement of Supporting Facts.

(1) On the eve of March 29, 2000, the Petitioner willingly walked into the police station in Stamford CT and gave a statement that he was responsible for the death of his cousin Jean Bernadel on that same evening minutes before walking into the police station. After being charged with the crime of murder, the Petitioner appeared before the Stamford Superior Court to be arraigned that following day. Being that the Petitioner was deemed to be indigent by the court, the Petitioner was therefore appointed a public defender by the name of Susan M. Hankins from the Stamford Judicial District.

(2) During the time which a pretrial conference was conducted, the prosecuting authority discussed with Attorney Hankins whether the Petitioner would be willing to plead to a manslaghter charge with an agreed sentence of

(3)

20 years. However, there was never an agreement to such charge because the Petitioner never authorized Attorney Hankins to make the agreement on his behalf (see **Exhibit A**).

(3) Therefore believing that better representation would be provided had the Petitioner had a private hired attorney, with the help of immediate family members, the Petitioner thereafter obtained Attorney Gary A. Mastronardi out of bridgeport CT to represent him in his case. The initial fee for representing the Petitioner was $30,000.00 in two parts; $15,000.00 if the case was disposed of without trial and an additional $15,000.00 if the case proceeded to a trial (see **Exhibit B**). Since the Petitioner's family believed that they would be able to pay the entire fee over a course of time, Attorney Mastronardi agreed to an initial immediate payment of $10,000.00 (**Exhibit C**).

(4) Being that the Petitioner's case involved mitigating circumstances, the Petitioner, on the advice of Attorney Mastronardi decided to pursue a defense of extreme emotional disturbance. Therefore, through Attorney Mastronardi, at a fee of $1,000.00, the Petitioner obtained a psychiatrist out of Glastonbury CT by the name of Kenneth M. Selig, to conduct a psychiatric evaluation of the Petitioner (**Exhibit D**).

(5) In preparation for conducting the psychiatric evaluation of the Petitioner, Dr. Selig was provided with the following material: the Investigator's Report from the Public Defender's Office (i.e., police reports and statements by various witnesses), an autopsy report of the victim, school records of the Petitioner's education in CT schools and the Petitioner's records from the Department of Corrections (i.e., medical and mental health records obtained during his arrest). However, Dr. Selig was never provided

(4)

with any further information relating to the Petitioner's childhood, culture and family background in Haiti, nor was there any effort by Attorney Mastronardi in obtaining such information from a Haitian Consulate. (The Petitioner immigrated from Haiti to the United States from Haiti in 1994 with his mother and siblings, to live with his father, who had immigrated from Haiti as well to the United States in the 1980's).

(6) On 12/12/00, the Petitioner was interviewed by Dr. Selig for approximately a hour and 15 minutes. During such interview/evaluation, Dr. Selig questioned the Petitioner in regards to the Petitioner's educational history in CT public schools and the Petitioner's adjustment in the Department of Corrections but never discussed the Petitioner's upbringing, culture and family history in Haiti (as stated above, the Petitioner was born in Haiti and lived in Haiti for approximately 16 years before immigrating to the United States), or the night of the incident in question.

(7) According to Dr. Selig, his interview/evaluation of the Petitioner revealed no psychological effect that would sustain a defense for extreme emotional disturbance. However, Dr. Selig concluded that additional testing may reveal brain damage, since the Petitioner reported a past of head injuries but that such testing would require additional sums in the thousands (**Exhibit E**). After being advised of all of the above, the Petitioner's family concluded that they would not be able to sustain the additional payments for the psychiatric evaluations or additional payments to Attorney Mastronardi for his services (due to re-occurring financial problems).

(5)

(8) Instead of terminating representation and turning the Petitioner's case over to the Plublic Defender's Office (due to the Petitioner's family's inability to sustain the payments), Attorney Mastronardi began to suggest that the Petitioner accept a plea of guilty to the crime of murder and that in the event that the Petitioner did plead guilty, it would be to a term of 25 years imprisonment (**Exhibit F**). In considering Attorney Mastronardi's advice, the Petitioner thereafter entered a plea of guilty to the charge of murder aand was scheduled for sentencing on 6/13/01 after a Presentence Investigation Report was completed. However, when the court canvassed the Petitioner as to voluntarily entering the plea, there were many questions that the Petitioner did not understand that Attorney Mastronardi coerced him in responding to.

(9) Upon interview and completion of the Presentence Investigation Report, the Probation Officer who interviewed the Petitioner reported that the Petitioner was the product of a stable upbringing and that the Petitioner expressed no remorse for the victim (**last page of Exhibit G**). However, as stated above, there was never any investigation of the Petitioner's upbringing in Haiti to determine whether he was the product of a stable upbringing and, contrary to the report by the officer that the Petitioner expressed no remorse, such report contained a statement from the Petitioner expressing remorse for the victim (**see 2nd page of Exhibit G**).

(10) On the day that the Petitioner was sentenced, Attorney Mastronardi neither objected to the officer's report that the Petitioner expressed

(6)

no remorse or advised the court that there was insufficient information regarding the Petitioner to determine that he was the product of a stable upbringing. Therefore, in sentencing the Petitioner, the court relied on inaccurate information and sentenced the Petitioner to a term of 27 years (contrary to what Attorney Mastronardi told him he would be sentenced to).

**(11)** In addition, upon accepting the plea and sentencing, neither the court or Attorney Mastronardi advised the Petitioner that there is a probability that he would be deported upon completion of his sentence. The Petitioner did not know that he had a detainer on him until after imposition of the sentence (**see Exhibit H**). He was never advised as to his immigration rights upon arrest, plea or sentence.

D. Claims For Relief.

**(1)** According to rule 1.16 of the Connecticut Rules of Professional Conduct, a lawyer shall not represent a client or where representation has commenced, shall withdraw from representating a client if: **(a)** the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; **(b)** the client fails to substantially fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled and; **(c)** withdrawal can be accomplished without material adverse effect on the interests of the client. Instead of ill advising the Petitioner to plead guilty rather that going to trial, Attorney Mastronardi should have terminated representation and turned the Petitioner's

(7)

case over to the Public Defender's Office or requested from the court that state provided funds be given for the additional psychological testing. Although Dr. Selig stated that he found no psychological effect that would sustain a defense for extreme emotional disturbance, there was no effort in conducting any additional testing for brain damage or any further inquiry into the Petitioner's childhood, culture, the night of the incident or the Petitioner's family history in Haiti. The fact that Dr. Selig indicated that additional testing may have revealed brain damage due to the Petitioner's past history of head injuries could have been a key element in a more thorough evaluation. In rendering ineffective assistance of counsel and overturning a guilty plea in a case titled Copas V. Commissioner, 234 Conn. 139 at 158 (1995), the Connecticut Supreme Court considered testimony by Dr. Selig as an expert witness in stating that a diagnostic clinic report of Copas was deficient because it included no psychological testing and did not provide any evaluation of possible brain damage. In the Petitioner's case it is obvious that there were mitigating circumstances due to the fact that the state was initially willing to offer the Petitioner a manslaughter charge. The mere fact that the Petitioner was not financially stable to sustain payment to Attorney Mastronardi violated rule 1.16 of the Professional Rules Of Conduct, precluded the Petitioner from a defense and having a compulsory process and rendered ineffective assistance of counsel, in violation of the sixth amendment to the United States Constitution.

(2) According to the Professional Rules Of Conduct, a lawyer shall explain a matter to the extent reasonably necessary to permit the client to

(8)

make informed decisions regarding representation. In advising the Petitioner to plead guilty, Attorney Mastronardi should have advised the Petitioner that the plea agreement could exceed beyond 25 years. The fact that the Petitioner believed that he was pleading to 25 rather than 27 without being canvassed properly violated §39-19 and 39-20 of the Connecticut Practice Book.

(3) In accordance with §43-10 of the Connecticut Practice Book, before imposing a sentence or making any other disposition after the acceptance of a plea of guilty, the judicial authority shall allow the parties to be heard to explain or controvert the presentence investigation report if the information contained in the report is inaccurate. The failure of Attorney Mastronardi to object to the inaccurate information concerning the Petitioner's upbringing and attitude towards the victim violated the Petitioner's sixth amendment right to confront witnesses against him and rendered ineffective assistance of counsel.

(4) In accordance with Connecticut General Statutes §54-1j, the court shall not accept a plea of guilty from any defendant in any criminal proceeding unless the court advises him of the probability of deportation if he is an immigrant to the United States. The fact that neither the court or Attorney Mastronardi advised the Petitioner of such probability violated the Petitioner's right to due process pursuant to the fifth amendment, enforcible through the fourteenth Amendment to the United States Constitution, thus making the Petitioner's plea involuntary without substancial knowledge of the consequences.

(9)

E. Requested Relief.

The Petitioner requests the court to withdraw his guilty plea.

F. Appointment of Counsel.

The Petitioner requests the court to appoint counsel to represent him in this petition.

### CERTIFICATION

I, Yves Henry Lorthe, hereby certify that everything herein is true and correct to the best of my knowledge.

NOV. 26, 2001
Date

*Henry Lorthe*
Signature of Petitioner

Address: Yves Henry Lorthe #281693
MacDougall Correctional Inst.
1153 East Street South
Suffield, CT 06080

Sworn and subscribed before me on this 26th day of NOV., 2001.

*W. Renee Haskins*
Notary

W. RENEE HASKINS
NOTARY PUBLIC
MY COMMISSION EXPIRES 12/31/2005